■ In the Matter of CATHERINE VAN GORDER, Petitioner, v BOARD OF EDUCATION OF THE UNATEGO CENTRAL SCHOOL DISTRICT, Respondent.—Levine, J.

Petitioner was employed as a principal account clerk for the Unatego Central District (hereinafter the District) for approximately 20 years. Among her other duties, petitioner was responsible for performing secretarial work for the District in connection with five Federal programs, funded through the State, the largest of which is referred to in the record as "Chapter I". In the past petitioner had received compensation in addition to her normal salary for her work relating to these Federal programs. The project director for these programs, Ronald Hull, one of the District's principals, would budget for this compensation by completing a line item on the annual Chapter I application known as indirect cost. The application would then be submitted to the State for approval. The approved funds budgeted as indirect costs under Chapter I would then be paid to petitioner as remuneration for the work she performed on all the Federal programs.

In the 1984-1985 school year, Hull budgeted $106 for indirect costs on the Chapter I application for that year. However, when the approved State budget was returned to the District, the indirect cost line item had been reduced to zero. At a November 1984 meeting of respondent, petitioner distributed a report she had prepared which reflected this and other changes in the funding for the Chapter I program.

At the end of the school year, petitioner realized that not all of the Chapter I funds had been expended. Without consulting anyone she prepared a budget amendment to transfer $735.58 into the line item for indirect costs. Petitioner also arranged to have this amount transferred into the District's general account used to meet payroll expenses. On June 3, 1985, petitioner had the budget amendment signed by Russell Raethka, who was the acting District Superintendent at that time. Petitioner received a check from the District for $735.58 on June 6, 1985, although she knew that the budget amendment had not yet received the necessary State approval.

Hull first learned of the budget amendment at a meeting of respondent held on June 17, 1985 when he received a copy of a final expenditure report for Chapter I which had been prepared by petitioner. In an ensuing investigation Hull also

discovered that petitioner had previously received moneys based on a budget amendment she had prepared in another Federal program. This amendment had increased the indirect cost line item from zero to $484.10. Thus, petitioner received a total of $1,219.68 from the Federal programs for that school year.

Thereafter the District served petitioner with two sets of charges pursuant to Civil Service Law § 75. Each charge alleged that petitioner was guilty of incompetence or misconduct based upon an unauthorized transfer of public moneys to herself. A hearing was held at which petitioner, Hull and her other supervisors testified. The Hearing Officer found petitioner guilty of both specifications and recommended that she be dismissed from service. Respondent adopted the Hearing Officer's findings and recommendation and petitioner was terminated effective January 12, 1987. Petitioner then commenced this CPLR article 78 proceeding to review the determination.

Petitioner's first contention is that respondent's decision is not supported by substantial evidence. We disagree. Although the testimony of petitioner and her supervisors at the hearing was conflicting, the credibility issues were for the Hearing Officer and respondent to resolve (see, Matter of Gonzalez v Coughlin, 126 AD2d 800, 801; Matter of Brathwaite v Gunn, 125 AD2d 305, 306). Hull testified that petitioner never consulted him about her compensation and that she was not authorized to initiate budget amendments herself and had never done so in the past. Hull also testified that it was highly irregular for petitioner to have listed herself as the "contact person" on these two amendments, a procedure he had never authorized. In addition, although petitioner contends that she was not aware that the elimination of the indirect cost line item meant that she was not to be paid for her work, there was other evidence indicating such an awareness on her part. Hull testified that at the November 1984 meeting of respondent, petitioner was asked by one of respondent's members if she had no salary as a result of the elimination of the indirect cost item in the Chapter I budget. According to Hull, petitioner replied, "Yes, my salary has been eliminated". One of petitioner's other supervisors, Ann Delello, an administrative assistant for the District, testified that after respondent's November 1984 meeting petitioner was unhappy that the indirect cost item had been deleted from the budget and that petitioner "couldn't understand why she had to keep doing [the work for the Federal programs] as long as she wasn't

getting paid for it". There was also testimony from the two individuals who were acting Superintendents at the time petitioner presented each of them with a budget amendment to sign. In contradiction of petitioner's testimony, both men stated that petitioner did not explain that the effect of the budget amendments was to compensate her for work done on the programs. They further testified that they signed the documents on the assumption that these changes had been authorized by Hull. In our view, the foregoing provides a sufficient basis to support respondent's determination that petitioner was guilty of incompetence or misconduct in transferring the funds to herself.

Petitioner also contends that the sanction imposed was harsh and excessive. In light of all the circumstances, however, we are not persuaded that the penalty of dismissal constituted an abuse of discretion (see, Matter of Pell v Board of Educ., 34 NY2d 222, 238-239; Matter of Brathwaite v Gunn, supra). Petitioner held a position of trust as a District employee, and, upon rejecting her explanation as to why she felt she was entitled to the money, respondent could rationally determine that she was unfit for further employment.

Finally, we note that petitioner's contention that she was denied a fair and impartial Hearing Officer is unpreserved for our review because this objection was never raised at the hearing. In any event, this contention is without merit (see, Matter of Gioe v Board of Educ., 126 AD2d 723; Matter of Pollman v Fahey, 106 AD2d 771, 773).

Determination confirmed, and petition dismissed, without costs. Casey, J. P., Yesawich, Jr., Levine, Harvey and Mercure, JJ., concur.